## TOWLES *v.* TANNER.

---

NEGOTIABLE INSTRUMENTS; EVIDENCE; BURDEN OF PROOF; MATERIALLY ALTERED INSTRUMENTS; REVERSIBLE ERROR; INSTRUCTIONS TO JURY.

1. Every negotiable instrument is presumed to have been issued for a valuable consideration, and every party thereto to have become a party for value.

2. Allegations in an affidavit of defense in an action on a promissory note, of want of consideration and that it is a forgery, do not impose upon the plaintiff the burden of proving that value was given and that it was not forged.

3. While if a promissory note appears on its face to have been materially altered, it is incumbent upon the party offering it in evidence to offer testimony to explain its condition, such as that it was in the same condition when it came into his hands, and that he was assured by the parties to it that it was all right, it is not necessary for the holder to prove, in the first instance, that he gave value for it or to prove collateral matter entirely outside of the note.

4. Where in an action on a promissory note against indorsers, the common counts are abandoned, leaving only a special count, and the issues are as to whether the note was materially altered by the maker and whether it was acknowledged by the indorsers, testimony that the maker was the agent of the defendants to raise money for a land speculation, is irrelevant and its admission is reversible error.

ſ. The instructions proper to be given the jury in an action on a promissory note claimed by the indorsers to have been materially altered by the maker after they had signed it, formulated.

No. 1271. Submitted March 12, 1903. Decided April 7, 1903.

HEARING on an appeal by two of several defendants from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action on a promissory note.

*Reversed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment of the Supreme Court of the District of Columbia rendered in a suit wherein the appellee, Charles B. Tanner, was plaintiff, and the appellants, together with one Zenas C. Robbins and Gilbert B. Towles, were defendants, the last named as the maker of a certain promissory note for $1,000, and Robbins and the appellants as indorsers thereof.

The original declaration was for two several promissory notes, each for $1,000, and contained three counts, one special count for each note, and thereafter the common counts. Subsequently in the place of the two special counts there were filed two amended special counts. Still later, for reasons satisfactory to the parties, one of the two notes was paid, and the special count upon it passed out of the case. There remained only the amended special count on one note and the common counts.

The defendant, Gilbert B. Towles, filed no plea and made no defense. There was no issue joined in regard to him, and judgment by default final was taken against him at the end of the cause in the trial court, at the same time that judgment upon verdict was rendered against the appellants.

The other three defendants, Robbins, H. O. Towles, and Bryan, severally pleaded the general issue, and in their affidavits of defense, which they filed with their pleas to obviate summary judgment against them under the rules of

the court, they averred that several notes indorsed by them
and delivered after indorsement to the said Gilbert B. Towles
for negotiation, including, as they believed, the note in suit,
had been fraudulently and materially altered by said Gilbert
B. Towles after such indorsement and delivery, without their
knowledge, authority, or consent.   Upon these pleas issue
was joined and trial was had before a jury.

At the trial the plaintiff, having proved protest of the
note and notice thereof to the defendants, thereupon pro-
ceeded at considerable length to adduce testimony tending to
show that this note in suit was only a renewal of a previous
note for the same amount, which the plaintiff had held, for
which he had given full value, upon which the names of all
the same parties, except Bryan, appeared, and which had
been surrendered to Gilbert B. Towles upon the delivery of
the present note to the plaintiff.   After great effort and
proof of such effort to compel the production of this previous
note in court, which effort, however, was in vain, the plain-
tiff adduced testimony tending to show the contents of it.
He then adduced testimony tending to show that both be-
fore and after the plaintiff had purchased the note now in
suit it had been exhibited to both of the appellants, and that
they had stated that it was all right and would be paid.
Thereupon the note itself was offered in evidence.   It pur-
ported to be dated June 21, 1899, and to be for the sum of
$1,000, payable three months after date, and to have been
signed by Gilbert B. Towles and indorsed by Henry O.
Towles, Zenas C. Robbins, and C. C. Bryan.   The signa-
tures of the indorsers were admitted by their counsel to be
genuine; and the note was thereupon admitted in evidence
without objection.   The note itself is not given in the record.

The plaintiff then proceeded still further to adduce further
testimony of acknowledgment by Bryan, of value given by
the plaintiff for the note, and of the circumstances under
which Bryan's indorsement was procured.   Testimony was
then introduced by him which is set forth in the record in
the following words:

" The said witness (one Erastus L. Hawks) further gave evidence tending to show that he had acted as agent for Gilbert B. Towles, Henry O. Towles, C. C. Bryan, and Zenas C. Robbins in the negotiation of the note in suit, and, after its maturity, in negotiations for delay in instituting suit; and he further gave evidence tending to show that Gilbert Towles was acting as the secretary of a corporation known as the Gettysburg Springs and Hotel Company, and in that capacity acting as the agent for the defendants in this case, all of whom were interested in said company. The said witness was asked by plaintiff's counsel how he knew that Gilbert B. Towles was acting as agent for the defendants Robbins, Bryan, and Henry O. Towles, and representing them in the conduct of that enterprise, to which question the defendants objected upon the ground that any transaction in which said Gilbert Towles engaged as secretary of said company could not bind the defendants in this case personally, and the question was therefore immaterial and collateral to the issue. This objection was overruled by the court, to which action of the court the defendants excepted. The witness Hawks then stated that he learned of the organization of the Gettysburg Springs and Hotel Company first through Gilbert B. Towles and H. O. Towles, of which H. O. Towles was president, Gilbert B. Towles, secretary; and that the two Towles, J. Emory Blair, and C. C. Bryan were directors; that all of the business was referred to Gilbert B. Towles by H. O. Towles and Zenas C. Robbins, but that witness never had much to do with the defendant Bryan."

This was in substance the testimony in chief for the plaintiff.

For the defense the appellant Bryan testified on his own behalf that he had no interest and no stock in the Gettysburg Springs and Hotel Company; that he had consented to act as a director of that company in order to make a quorum, but that in fact he had never attended a meeting of directors; and that, while his indorsement on the note in suit was genuine, it was for accommodation, and the note was not in its present form at the time of such indorsement. He gave

testimony also tending to explain his admission after indorsement, to which reference was made in the testimony on behalf of the plaintiff, and the explanation· was substantially to the effect that his attention at the time had not been directed to the fact of the genuineness of the note, but to that of his indorsement and financial standing.

An expert witness called by the defense testified that the note had been altered, apparently after indorsement, by the use of chemicals; that the date had been changed; that the time of payment had been altered from one month to three months; that the amount payable both in words and figures appeared to have been originally $1,100, and that there were some other minor alterations.

·The appellant Henry O. Towles testified on his own behalf. He stated that his indorsement was genuine, but that the note was not then in its present form; that he had previously indorsed notes to enable Gilbert B. Towles to pay for the interest of the latter in the Gettysburg Company, and that no part of the consideration inured to his own benefit. On cross-examination he was interrogated at great length in regard to the Gettysburg transaction.

The defendant Robbins also took the stand on his own behalf, and testified that the note in suit had no connection with the Gettysburg Company; that his indorsement was genuine; but that the note had been altered subsequently thereto.

Testimony in rebuttal was given, wherein the Gettysburg transaction was again very largely ventilated.

The jury returned a verdict in favor of the defendant Zenas C. Robbins, and against the defendants Henry O. Towles and C. C. Bryan, for the sum of $1,000, the amount of the note as it appeared in suit, and judgment was accordingly entered thereon. From this judgment, upon exceptions reserved to rulings of the trial court in the matter of the admission of testimony deemed to be irrelevant, and in the matter of the allowance and refusal of instructions to the jury requested by the parties, the defendants Henry O. Towles and C. C. Bryan have brought their cause to this court by appeal.

*Mr. Walter C. Clephane* for the appellant Henry O. Towles.

*Mr. E. C. Brandenburg* for the appellant Charles C. Bryan.

*Mr. Charles A. Keigwin* and *Mr. Orrin B. Hallam* for the appellee:

1. Plaintiff was under no obligation to produce the original note, or to account for its nonproduction, as a condition of showing that a loan had been made in March. That matter was collateral to the issues involving the note in suit, made by the special counts of the declaration, while the common counts proceeded not at all upon the note of March 27th, but solely upon the consideration of the loan made on that date. The fact that a transaction is accompanied, and may be evidenced, by a written memorandum, such as a promissory note, a bill of lading, a notice of protest, or other statement in writing, does not make it necessary to prove the transaction by the writing. Except in certain particular instances, as where the paper itself is part of the issue, or is by agreement of the parties made the sole evidence of their contract, the loan, consideration or other fact may be proved by parol, without production of the paper. 1 Greenl. on Ev., Secs. 86–90; *Keene* v. *Meade,* 3 Pet. (U. S.) 1; *Dickins* v. *Beal,* 10 Pet. (U. S.) 572; *Newell* v. *Nixon,* 4 Wall. (U. S.) 572; *Klein* v. *Russell,* 19 Wall. (U. S.) 433.

2. If plaintiff was bound to produce the note of March, his notice to the defendants, including Gilbert Towles, the last possessor as shown by the evidence, entitled him, upon defendants' failure to produce, to show the character of the note by secondary evidence. The personal presence of the party or other person who accounts for loss of the paper is never requisite. Otherwise, in former times, a party, being disqualified to testify, could not prove the fact or circumstances of his own loss of papers; and, therefore, it has always been held that, upon matters collateral and incidental to the trial, such as this matter, continuances, and the like, affidavits

were receivable. *Riggs* v. *Tayloe,* 9 Wheat. (U. S.) 483; *Tayloe* v. *Riggs,* 1 Pet. (U. S.) 591.

3. Unless the notice to produce is sufficient to entitle plaintiff to use secondary evidence, there is no way in which one party can prove papers in possession of the adverse party. While a stranger to the suit may be required upon *subpœna duces tecum* to bring his papers into court, the issue of such subpœna to a party to the cause is unknown to the books. 1 Greenl. on Ev., Sec. 560; 1 Whart. on Ev., Sec. 152; Stark. on Ev. 550. And it seems settled that, in the absence of statute, a court of common law is powerless to compel a party to produce papers in his possession; the only course is to give notice to produce, and the only penalty for refusal is the admission of secondary evidence. *Main* v. *Aukam,* 4 App. D. C. 54; 1 Phill. on Ev. 436, 438, 439; Cow. & Hill's Notes to Phillips, 1171 *et seq.; Bank* v. *Hillard,* 5 Cow. 419; 6 Cow. 62. This defect of power in common-law courts is the ground of jurisdiction in equity to grant discovery. Story Eq. Jur., Sec. 1485. Statutes of modern date often confer upon law courts power to compel production of papers held by parties to the cause. D. C. Code, Sec. 1072. Such statutes adopt the principles and, to a certain extent, the methods of procedure, obtaining in equity. A party was never obliged to resort to equity if he could get along with secondary evidence; nor are the statutes mandatory.

4. The very point made by defendants, as ground for excepting such a situation as the present from the general rule, has been decided adversely to their contention in the single case on the subject discovered by counsel. It was held that, where one defendant failed to plead and the other defended, notice to produce to the defaulting defendant, entitled plaintiff to use secondary evidence against the other; and the authority of the case is recognized by so careful a writer as Mr. Starkie. *Beckwith* v. *Benner,* 6 Carr. & P. 682; Stark. on Ev. 554.

5. Though, for reasons above set out, plaintiff did not regard the *subpœna duces tecum* as necessary, or even effective,

such a subpœna was issued in deference to the suggestion of the court. Upon the failure of G. B. Towles to appear, and the indisposition of the court to send for him in his apparent illness, the plaintiff had done all in his power to procure the note. The sufficiency of Towles' excuse for not appearing was a matter between him and the court, and, had appellants chosen to make it so, a matter between them and the court. They were at liberty to move for an attachment upon the subpœna, and if the exigency of the writ was not pressed it was because they did not choose to take the responsibility.

6. Finally, if there was any error in this matter, it was cured when the common counts were taken from the jury. The secondary evidence proved only the fact of plaintiff's loan in March, and had no bearing upon the note given in June. It tended only to establish a consideration for the original loan, and, as defendants have a verdict for that, the supposed error is quite harmless to them.

A large number of the appellants' exceptions relate to evidence admitted only under the common counts, and that those counts, having been taken from the jury by direction of the court, it is utterly unnecessary and improper to consider exceptions growing out of evidence introduced under them. *Am. Sec'ty & Tr. Co.* v. *Lyon* [*ante,* p. 122].

7. The evidence, taken as a whole, shows that all the defendants were, to a greater or less extent, interested in a corporation called the Gettysburg Hotel and Springs Company, of which concern H. O. Towles was president, G. B. Towles, secretary, and C. C. Bryan, one of the directors; that this company had bought a large tract, part of the battlefield of Gettysburg, upon which it was expected a large profit might be made by selling the land to the United States; that the corporation was heavily indebted, to an extent variously stated at from $25,000 to $35,000 or $40,000, and, finally, at about the date when plaintiff's note matured, $100,000; that G. B. Towles was charged with the management of the company's finances, in which matter he acted in frequent and intimate communication with the other defendants; that E. L. Hawks, who negotiated the original loan

with plaintiff, was frequently and habitually associated with these financial operations, as agent for all four of the defendants; that all of the defendants were, and for several years had been, in the habit of signing notes which were used in aid of the Gettysburg company, to carry its floating indebtedness, or for some other purpose; that these notes, in 1899, aggregated an amount variously stated at from $35,000 to $100,000; that G. B. Towles had been most actively concerned in keeping this indebtedness afloat, Bryan had indorsed a large number of the notes, and H. O. Towles and Robbins had, by their assurances, given credit to the notes; and that, on various occasions, particularly in the fall of 1899, the several plaintiffs had recognized and declared the validity of the paper in general and of various notes in particular, and their own liability thereon.

It should be premised that, whether this general evidence is or is not intrinsically competent, the plaintiff was primararily responsible for a very small fragment of it; and such testimony as was presented upon his case in chief relative to other notes than his own was admitted without objection. The defense being that G. B. Towles had altered not only the note in suit but many others, defendants naturally desired to show as far as they could the extent of his fraud. Accordingly, every one of them, upon taking the stand, proceeded at once to volunteer some statement, more or less copious and material, relative to his connection with the Gettysburg enterprise, and each of them, either upon his examination-in-chief, or without objection upon cross-examination, went, more or less, extensively into the affairs of the company and offered a great deal of evidence apparently collateral to the issue.

Now, if it were conceded that this collateral evidence was in itself incompetent, the fact would remain that defendants themselves opened the door for it, and not plaintiff. When once the extent, character, and incidents of the general scheme, of which one note was an incident, were offered as a defense and to supplement the direct proof of alteration in the particular case, plaintiff was not only entitled but obliged

to exhaust the subject. Indeed it would have been difficult, considering the close relationship between one note and the general series, for either side to have confined its evidence to the one note.

Independently of this, plaintiff, upon being met with proof of forgery in his note, was entitled to overcome such defense by going into the circumstances under which it had been given, and into the conduct of the parties in relation thereto and their relations as between themselves. He was at liberty to prove that the considerations inured to the benefit of some or all of the defendants, that they had known, authorized, approved, or ratified the alleged frauds of G. B. Towles in other instances, part of the same general scheme, or had otherwise maintained such a course of dealing in the premises as amounted to estoppel. *Weed* v. *Carpenter*, 4 Wend. (N. Y.) 216; *S. C.*, 10 Wend. (N. Y.) 403; *Barber* v. *Gingell*, 3 Esp. 69; *Neal* v. *Ewing*, 1 Esp. 61; *Rankin* v. *Blackwell*, 2 Johns. (N. Y.) 198; *Hammond* v. *Varian*, 54 N. Y. 398; *Gibson* v. *Hunter*, 2 H. Bl. 287; *Haughton* v. *Eubank*, 9 Bing. 89; *Woodruff* v. *Munroe*, 33 Md. 146; 2 Kent Comm. 615. In such cases the inquiry necessarily takes a wide range. *Ofenstein* v. *Bryan*, 30 West. L. Rep. 270; *Holmes* v. *Goldsmith*, 147 U. S. 150; *Castle* v. *Bullard*, 23 How. (U. S.) 172; *Lincoln* v. *Claflin*, 7 Wall. (U. S.) 132; *Butler* v. *Watkins*, 13 Wall. (U. S.) 456; *Brent* v. *Bank*, 1 Pet. (U. S.) 89.

Even, therefore, had defendants consistently resisted proof of the general scheme to which our note was incident, plaintiff was entitled to show any association, intimacy, knowledge, or conduct on their part which would warrant an inference that they knew, approved of, connived at, or took any benefit from, the alleged frauds of G. B. Towles.

More than this, it is submitted, the competency of such collateral evidence is to be tested, not by the success or failure of the plaintiff in proving all or any of the facts suggested, but solely by the tendency of the evidence to prove such facts. It is not the question whether the jury or this court would find any of the given facts upon such proof as was

adduced, but whether plaintiff's testimony, if believed by the jury, would in any degree conduce to prove the facts to be established. Any particular piece of evidence may be disbelieved, or may be overcome by stronger proofs; but it is not for that reason incompetent, provided it might be considered as establishing a single link in a chain leading to any one of the facts which plaintiff was at liberty to prove.

When any one of the defendants (as all of them did) denied that he had signed the note in suit in its present form, plaintiff was at liberty, for the sake of testing his memory, to question him as to the number, dates, amounts, and other features of other notes he had signed in pursuance of the same general scheme. Each defendant admitted his signature on this note to be genuine, but declared that he had signed it in some other condition; whereupon it became very material to learn whether the witness was in fact able to remember anything at all about the original form of the note. Not one of them pretended to know how the note originally read; and they all showed that they had signed so many notes, running through so many years, that their memories were of no value. Such inquiry was competent to the plaintiff to that end, and makes proper all questions as to the extent, the aggregate, and the circumstances of defendants' wholesale signing of notes.

Still further, defendants might justly be questioned as to statements made by them, severally or collectively, having reference to their notes as a class, or to their common enterprise; and this, not only to establish their accrediting of paper altered by G. B. Towles, but to prove that the proceeds of the alleged fraud went to their common or individual benefit. Whether all or any of these facts were actually established is beside the question.

It is enough that any particular inquiry might, if successful and not neutralized by credible evidence in rebuttal, tend to prove any of such facts.

In addition, plaintiff was, of course, entitled to question any of the witnesses upon any point involved in the issue, or upon any point pertinent to such inquiries as have been sug-

gested, and to contradict his answer by way of impeachment. And, finally, inasmuch as the defendants were not only witnesses but parties to the cause, they were subject to cross-examination upon matters quite collateral, or only remotely related, to the issue; and this wider latitude in respect to a party, as distinguished from a mere witness, is wholly within the discretion of the trial court. *Rea* v. *Missouri,* 17 Wall. (U. S.) 532.

8. The order of proof is almost entirely within the discretion of the trial court, and the rule seems to be that the discretion is almost never to be overruled where exercised in favor of admitting evidence. It will be observed that the court in this case did not, as was done in *Throckmorton* v. *Holt,* 12 App. D. C. 552, 180 U. S. 552, rule that plaintiff must put in all his case in chief, and did not otherwise approve the notice given by defendants at the close of plaintiff's case in chief. It will be difficult to find any matter given in rebuttal which should necessarily, or even properly, have been offered in chief, and certainly none admitted in rebuttal did defendants any injustice.

9. An exception not showing what answer was given to the question to which objection was made cannot be considered. *Nailor* v. *Williams,* 8 Wall. (U. S.) 107; *Shauer* v. *Alterton,* 151 U. S. 607.

Mr. Justice MORRIS delivered the opinion of the Court:

There are thirty-seven assignments of error in this case. This is a very large number, but there is apparently some justification for it in the fact, of which we were advised in argument, that the trial extended over five weeks. It is very apparent from the record that this extraordinary prolongation of the trial of what would seem to be an apparently simple issue was due in great measure to the introduction of useless or irrelevant testimony and to the discussion attendant upon the attempt to introduce such testimony.

The promissory note here in suit is one of a number of notes mentioned in the case of *Ofenstein* v. *Bryan,* 20 App.

D. C. 1, as alleged to have been materially altered by Gilbert B. Towles, one of the parties to them, to whom they had been delivered for negotiation, after indorsement thereof by the other parties. If the record before us be correct — and we have not been advised to the contrary; in fact, the record bears out the statement — there is here presented the apparently extraordinary case of an alteration of a piece of negotiable paper, not by the raising, but by the diminution, of the amount payable. The note, as set forth in the plaintiff's declaration, calls for the payment of $1,000; the testimony of the expert witness for the defense, which is the only testimony specifically to the matter of alteration in the body of the note, tends to show that the original amount was $1,100. Apparently the explanation of the anomaly is in another portion of the testimony for the defense, which tends to show that an original and probably genuine note for $1,100 had previously been issued and discounted at some bank, and that after having been paid and taken up by the defendant Gilbert B. Towles, it was improperly altered and reissued by him to the plaintiff in the present case, the appellee here.

The record also presents the unusual feature of a long and labored effort on the part of the plaintiff to prove, what he was not required to prove at all, so far as the record before us discloses, the consideration of the note in suit. That there are circumstances under which a plaintiff may be required in the first instance and in his testimony in chief to go into the question of the consideration given for a promissory note may be conceded, but this does not appear to be such a case. It has been the general law, both in England and America, for two hundred years — that is, since the statute of 3 and 4 Anne, chap. 9, relating to promissory notes — and this general law has been embodied in the act of Congress of January 12, 1899 (30 Stat. 785), relating to negotiable instruments; and again in the new code of law for the District of Columbia, into which that act of Congress has been incorporated as sections 1304 to 1493, both inclusive, that " every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signa-

ture appears thereon to have become a party thereto for value." Why, therefore, there was so strenuous an effort on the part of the plaintiff to prove that value had been given for the note is not quite apparent. It was for the defendants to show affirmatively that no consideration had been given, and it would then have been open to the plaintiff to rebut the testimony to that effect on the part of the defendants. Proof of genuineness of the signatures and proof of notice of protest would have constituted a sufficient *prima facie* case against the appellants.

It is true that in his affidavit of defense the defendant Bryan alleged want of consideration for the note. But this did not impose upon the plaintiff the burden of proof of value given; it did not change the rule of law. Nor did the allegation of forgery made in that affidavit and in the other affidavits of defense change the rule of law. Forgery is matter of defense. It is not required in the first instance to be disproved by the plaintiff because the defendants have alleged it in their plea or affidavit.

It is true that in the case of *Ofenstein* v. *Bryan,* to which we have already referred, we held that "the weight of authority, as well as reason, supports the proposition that, where the alteration is material and such as reasonably to excite suspicion, it is incumbent upon the party offering it in support of his claim thereunder to give some evidence tending to explain its condition." In that case a promissory note was offered in evidence, which upon its face and to the naked eye showed alterations to have been made in it, and the trial court, upon inspection of it, held that there were such visible and patent alterations, and therefore refused to admit it in evidence until the plaintiff offered some testimony tending to explain its condition. The note was again produced and inspected in this court on the appeal, and we upheld the ruling of the trial court.

No such case is presented by the record now before us, and if there were such case, it would not have required proof of value given by the plaintiff or proof of collateral matters entirely outside of the note. What is required is some testi-

mony in explanation of the condition of the note, such as that it was in its present condition when it came into the hands of the plaintiff, and that having made inquiry of the defendants he was assured by them that the note was all right. Only a small part of the plaintiff's testimony in chief conforms to this requirement. There is no copy of the note in the record; and if the alterations were visible and palpable, and such as reasonably to excite suspicion, we are not informed how they did appear. We are not informed by the record that the note was presented to the court for inspection, and that the court thereupon required explanation of the alterations. When it was actually offered in evidence, it was admitted without objection on the part of the defendants.

But assuming that the note on its face was free from suspicion and that all this testimony in regard to value may be regarded as surplusage which did not injure anyone; or assuming, on the other hand, that the note on its face was such as reasonably to excite suspicion, and that the requirement of explanation by the plaintiff was sufficiently gratified by the proof that was given of acknowledgment of its genuineness by the appellants — and undoubtedly that acknowledgment was sufficient, if proved — yet we are clearly of opinion that the testimony in regard to the Gettysburg adventure was wholly irrelevant, and should not have been admitted. Whatever may have been the fact, it is not shown here, nor is there any testimony tending to show that the proceeds of this note went into that adventure. It may well have been that they did, but this is only an inference. There is no testimony whatever that such was the fact. And if they did go into that adventure, they may have gone for the personal benefit alone of Gilbert B. Towles, as is suggested in the testimony of Henry O. Towles, in order to help him to pay for his stock. So far as the defendant Bryan is concerned, there is no testimony to show that he had any pecuniary interest whatever in the Gettysburg enterprise. Consequently, whether the money went into it or not is of no relevancy so far as Bryan is concerned.

The declaration, it will be remembered, had a special count

on the note and the common counts. Plainly any testimony in regard to the Gettysburg adventure is irrelevant to the issue upon the special count, and the common counts have been abandoned by the plaintiff. They have not been withdrawn; nor has any testimony applicable to them, if any, been withdrawn. An instruction was given by the trial court to the jury at the instance of the defendants to the effect that there was no evidence in the case upon which the jury could find a verdict against any of the defendants upon the common counts. In this instruction the plaintiff acquiesced; he made no objection and reserved no exception to it. And in the argument before us it was announced by counsel for the appellee that the common counts were eliminated from the case. The testimony in regard to the Gettysburg transaction therefore remains as applicable only to the special counts, if it has any application at all. If it has no application at all, that, of course, means that it is wholly irrelevant. What application it can have to a suit against the indorsers of a promissory note, as such, we fail to appreciate. There is absolutely no connection whatever between the two things. The issue was not as to money had and received by the defendants for the use of the plaintiff, but as to the execution of a promissory note, for which it is practically conceded the appellants received no money. And the genuineness of the signatures being admitted, that issue resolved itself into the question of forgery or no forgery, and ultimately also into the question of acknowledgment or no acknowledgment of the note by the defendants. That Gilbert B. Towles may have been the agent of the other parties in the Gettysburg adventure, and their agent to raise money for that adventure, can have no bearing whatever on the question of forgery or subsequent acknowledgment of the note. Proof of agency in the Gettysburg transaction is no proof of agency to alter notes at will. They are very different things. And, of course, such agency in the Gettysburg transaction has no bearing on the question of the acknowledgment of the integrity of the note by the appellants, Henry O. Towles and Bryan.

It is impossible to say how far this testimony in regard to

the Gettysburg business may have influenced the jury. That it was intended to influence them is beyond question. The large space given to it in the record, and the large space which we are informed was given to it in the argument before the jury, evidences the fact that it was greatly relied on by the plaintiff. Regarding it as irrelevant, we cannot regard it as being without injury to the appellants. While the plaintiff's case, as developed in the record before us, might well have been made out without this testimony, we cannot say that the jury were not influenced by it in the rendition of their verdict.

We must regard the admission of this testimony as error for which we must reverse the judgment.

2. It is unnecessary to consider the other assignments of error. One or two of them, it may be noted, have no foundation in the record. They are based upon questions which were not answered. As to those which have reference to the admission of testimony other than concerning the Gettysburg transaction, it would subserve no good purpose to review the questions raised. The testimony may be different on the new trial which must be ordered. In view, however, of the fact that the propositions of law contained in the instructions given or refused by the trial court are likely to be again brought forward upon such new trial, and therefore it is expedient that the law of this case should now be settled as far as it is possible for us here so to do, especially inasmuch as we are advised that there are numerous other causes pending in the trial court which await the disposition of this present case, and which should not be permitted to block the administration of justice by inordinately protracted trial, we deem it proper to express our opinion of the instructions that were actually given to the jury by the trial court, and to formulate them in more appropriate form, as we believe they should be formulated. For although the instructions as given by the court are in our opinion substantially correct and correctly state the law applicable to this case, there is in them much unnecessary verbiage and repetition and some inaccuracy of language, due undoubtedly to the haste of their preparation

by counsel at the trial table. They might well be abbreviated, condensed, and simplified; and so simplified they might be stated in the following terms:

1. There is no evidence in the present case upon which a verdict can properly be rendered against the defendants, or any of them, upon the common counts.

2. If the note in suit has not been materially altered at any time; or if it has been materially altered, but before indorsement thereof by the defendants, the plaintiff is entitled to recover, notwithstanding such material alteration.

3. If the note in suit was materially altered after the indorsement thereof by the defendants and without their authority or consent, and without ratification thereof by them after such alteration, the plaintiff is not entitled to recover, and the verdict of the jury should be for the defendants. But if there was no such alteration after indorsement; or if there was such alteration, and it was with the knowledge or consent of the defendants, or it was ratified by the defendants with a view to the negotiation of the note, the plaintiff is entitled to recover.

4. If the note in suit was fraudulently altered after indorsement thereof by the defendants, and yet prior to its negotiation to the plaintiff and with a view to such negotiation, or to the negotiation of it to any other person, was exhibited to the defendants in its altered condition, and they, with full knowledge of the alteration or with the means of knowledge then in their possession, declared the note to be valid as it then was, and such declaration was communicated to the plaintiff, and the plaintiff was thereby induced to accept the note, the plaintiff is entitled to recover; otherwise, however, the verdict should be for the defendants.

5. If upon the face of the note it appears to have been materially altered, and the alteration is such as reasonably to excite suspicion, it is incumbent upon the plaintiff to explain its condition. But if the alteration is not so apparent on the face of the paper as reasonably to excite suspicion, which is a question for the court in the first instance, then it is incumbent on the defendants, as matter of defense, to

show the alteration. If the defendants have shown such alteration, the burden of proof is thereupon shifted to the plaintiff to show that such alteration was made before the indorsement of the note by the defendants; or that, if it was made after such indorsement, it was made with the knowledge or consent of the defendants, or was ratified by them with full knowledge thereof or with the means of knowledge in their possession, or that the note so altered was declared by them to be good and valid with a view to its negotiation.

As already stated, only two of the four defendants in the court below have appealed. There was no reason for the defendant Robbins to appeal, for the verdict and judgment were in his favor. Nor, for a very different reason, was there any ground for appeal on the part of Gilbert B. Towles. The judgment, therefore, as to these two must stand. But for the error referred to in the matter of the admission of testimony in regard to the Gettysburg transaction, the judgment against the defendants Henry O. Towles and C. C. Bryan, the appellants here, must be, and it is hereby, reversed with costs.

The cause will be remanded to the Supreme Court of the District of Columbia, with directions to award a new trial. And it is so ordered.                    *Reversed.*